People of Porto Rico, Plaintiff and Appellee, v. Carlos Arrocho, Defendant and Appellant.

No. 2615. Argued January 14, 1926.—Decided January 18, 1926.

1. Murder—Joint Indictment—Continuance—Discretion of Court—Separate Trial.—When two defendants are jointly indicted for a crime and appear by different attorneys and because of the illness of one of the attorneys the other moves for a continuance the court may order a separate trial of the defendant whose attorney is present without abusing the discretion given to it by section 238 of the Code of Criminal Procedure.

2. Id.—Evidence—Confession.—The rule that a confession is to be considered in its entirety does not compel the jury to give the same belief to every part of it. The jury may attach such credit to any part of it as they deem it worthy of, and may reject any portion of it which they do not believe.

3. Id.—Verdict—Extenuating Circumstances.—A jury is not bound to state in the verdict that extenuating circumstances exist, unless the evidence shows that fact and the law recognizes it as such.

4. Id.—Death Penalty—Construction of Law.—Since section 6 of Act No. 36 of 1917 is germane to the main subject expressed in the title and necessary to accomplish the object of the Act, it is valid although not expressly included in the title.

5. Id.—Id.—Id.—It being the intention of the Legislature in enacting Act No. 36 of 1917 to suspend temporarily the death penalty, the amendment of section 202 of the Penal Code made to carry out the purpose of the Act is not of such a nature that it requires that the said section should be newly reenacted in its entirety in order that it might take effect again at the expiration of the period of the temporary suspension fixed by the same Act.

Second District Court of San Juan, M. Rodríguez Serra, J. Judgment of conviction for murder in the first degree. *Affirmed.*

*Luis Muñoz Morales* for the appellant. *José E. Figueras, Fiscal,* for the appellee.

Mr. Chief Justice Del Toro delivered the opinion of the court.

Carlos Arrocho, under sentence of death, appealed to this

court. In the brief his attorney assigns that the district court erred (1) in denying a continuance and ordering a separate trial without a motion to that effect by the defendant, (2) in overruling the motion for a new trial, and (3) in overruling the motion in arrest of judgment made on the ground that the death penalty does not exist in Porto Rico.

In relation to the first assignment the record shows that on December 9, 1924, the case was called for trial, the district attorney appearing for the government and the defendant in person and by his attorney. At the outset Arrocho's attorney filed a written motion for a continuance because of the illness of the attorney for Clemente, the other defendant. The indictment charged both Jacinto Clemente and Carlos Arrocho with the crime of murder.

The district attorney said that as each defendant had his own attorney, he did not object to a continuance in the case against Clemente, but insisted that the trial of Arrocho be proceeded with. Thereupon the court asked Arrocho's attorney the following question: "Is there any reason why Carlos Arrocho should not be brought to trial?" The attorney replied: "In the name of my colleague Tizol I would insist on a continuance in both cases; but if the court is of a different opinion I am at its orders, taking an exception in the name of attorney Tizol to the ruling of the court."

The ruling of the court was as follows:

"The court grants the motion for a continuance in so far as Jacinto Clemente is concerned. In view of the fact that these cases can be tried either separately or jointly and that in the previous trial they were tried separately, the court is of the opinion that although the trial of Jacinto Clemente can be continued, there is no reason why Carlos Arrocho should not be tried today, the jurors and the defendant being present and the district attorney being ready with his evidence. Therefore, it is ordered that the jury be impanelled and the trial of Carlos Arrocho be proceeded with.

The motion for a continuance is overruled and it is ordered that the trial of Carlos Arrocho be proceeded with separately."

To this exception was taken as follows:

"In the name of my colleague Tizol and in accordance with section 238 I except to the ruling of the court. However, as attorney for Carlos Arrocho, I am at the orders of the court."

[1] Section 238 of the Code of Criminal Procedure reads as follows: "When two or more defendants are jointly charged with a felony, any defendant requiring it must be tried separately. In other cases the defendants jointly charged may be tried separately or jointly in the discretion of the court." The necessary conclusion is that the first assignment is without merit. The court had discretion in its ruling and nothing shows that it exercised its power to the prejudice of the defendant.

In considering the second assignment it is necessary to enter into the merits of the case.

The charge was that on February 20, 1924, in the municipality of Río Piedras, Arrocho and the other accused with malice aforethought killed Guillermina Rodríguez, a girl under 14 years of age, while committing the crime of rape upon her.

The evidence shows the guilt of the accused clearly and positively. The girl left her home to go to school on the 20th of February and did not return. She was searched for diligently and on the following day her dead body was found in a cane field with a belt tied tightly around her neck. After an autopsy the doctor declared that her death was due to strangulation by asphyxia. An examination of the body showed also that the girl had been raped.

The death by violence was proved. Who was the murderer? Several witnesses testified that they saw the defendant near the girl when she was going from her home toward the school. The house was in the country and she was following the Cepero road. One witness said that he

saw the defendant and another person take hold of the girl and carry her into the cane field where her dead body was found. The defendant himself testified before the district attorney that because of his fear of Clemente, the other defendant, he helped him to carry the girl into the field and ravished her; but that he left her alive in Clemente's company. Witness Arturo Rodríguez testified that he was a prisoner in the penitentiary and became friendly with Arrocho and Clemente; that they asked him why he was there and he told them. That they continued the conversation and, to quote his own words, "they told me that they were lying in wait for the girl at a bend in the Cepero road and when she came along they took hold of her and when she attempted to scream they took off a belt that she was wearing and tied it tightly around her neck; then they carried her to the other side and she asked them not to kill her, saying that she would marry one of them; that they replied: 'No, you would expose us. We are going to enjoy you and at night we will bury you.' They intended to bury her at night. These statements were made to me by Carlos Arrocho and Jacinto Clemente.  *  *  *  The first one to speak was Carlos Arrocho.  *  *  *  After that I asked Jacinto Clemente if it was true and he said yes, telling me that both of them caught her and each had connection with her twice. That they told him that they had not buried her because they had no time, as they were being searched for actively."

Such is, in substance, the result of the evidence. The appellant maintains that it is not sufficient to convict him of murder.

(a) In the first place he alleges that the jury could not accept a part of his confession and reject the rest, citing the case of *People* v. *Flores*, 17 P.R.R. 166.

[2] The *Flores Case* is adverse to the defendant. Therein, citing 12 Cyc. 484, it was said:

"The rule that a confession is to be considered in its entirety does not compel the jury to give the same belief to every part of it. The jury may attach such credit to any part of it as they deem it worthy of, and may reject any portion of it which they do not believe. All of it must be carefully weighed by the jury, and upon all the circumstances surrounding the case they must determine how much of it they will receive and how much they will reject."

Here the confession made by the defendant in the presence of the district attorney was submitted to the jury in its entirety and exactly as made. The court also submitted to the jury the admissions of the defendant in his conversation with witness Rodríguez, as testified to by Rodríguez. The jury undoubtedly completed the former with the latter and, taking both together with the rest of the evidence, were convinced of the guilt of the defendant, as expressed in their verdict.

To hold that the jury were bound to find that the facts took place exactly as stated in the confession would be to leave the establishment of the facts to the choice of the defendant, who could admit responsibility for the killing, but convert, for example, a case of murder into homicide. The jury examine and weigh all of the evidence. The confession in this case was a part of the evidence and the jury considered it in the light of and in connection with the rest of the evidence, in doing which they committed no error.

The appellant insists that in any event the evidence disclosed two extenuating circumstances which were not considered by the jury—the age of the defendant and his mental deficiency.

The judge, in his charge to the jury, expressed himself in part as follows:

"Your verdict may be in either of these two forms: Merely guilty of murder in the first degree, or if you believe, as I said before, what he said in the presence of the district attorney or think that there is some extenuating circumstance which lessens his responsibility in the commission of the act, then you can add to the verdict of guilty the phrase 'with extenuating circumstances.' If

you believe that there were no extenuating circumstances, then you should omit that phrase and find him guilty of murder in the first degree. If you believe that he is not guilty of the crime; that what the witnesses have stated is not true; that this man was not at the place and had nothing to do with the acts charged; that he is innocent, or if you have reasonable doubt if his guilt, then it is your duty to find a verdict of not guilty.''

[3] The jury brought in a verdict of guilty of murder in the first degree. They found no extenuating circumstance and nothing in the record shows that they were bound so to find.

(*b*) In connection with the matter of age, our penal statute in force refers to it only to establish incapacity to commit crime. Up to the age of seven, children are considered incapable of consciously committing crimes and from seven to fourteen they are also so considered, in the absence of clear proof that in committing the act charged they knew its wrongfulness. Section 39 of the Penal Code.

Our old Penal Code of 1879 fixed not only the exempting but also the extenuating circumstances, and when the accused was under eighteen this was considered an extenuating circumstance. Section 9 of the Penal Code of 1879.

Arrocho had reached nineteen years of age when he committed the crime. Nothing obliged the jury to find that his age was not sufficient to render him fully responsible for his acts.

(*c*) In order to show the so-called mental deficiency of the defendant the defense introduced the testimony of Gaspar Encarnación, primary teacher of the penitentiary in which the defendant was imprisoned. He testified that he had known Arrocho for about four months; that when he began to teach him he was found "in a grade of rudimentary education;" that he pursued "the studies of the primary grade," and that "he has passed from the primary grade." He also testified that Arrocho "has what might be called sensory aphasia consisting of mental deafness;

·that the person suffering from it, although an adult or a man, can hear any utterance but can not understand it perfectly or interpret it. He is in the condition of a child of one year of age which can hear any conversation carried on in its presence but can not understand what is said."

The truth is that the very facts established by the teacher himself do not seem to justify his conclusion. Arrocho had a rudimentary education which, as the teacher himself testified, is "what is taught more or less in the first grade." Unfortunately, thousands of men in this Island have not even that degree of education. After being taught by the teacher for four months Arrocho "passed the grade." His mind, therefore, does not seem to be so deficient. The conclusion of the teacher of itself is so exaggerated that it is readily understood how it made no favorable impression upon the jury.

Does the death penalty exist in Porto Rico? The appellant contends that it does not. Let us study the proposition.

Section 202 of the Penal Code in force in Porto Rico reads in part as follows:

"Sec. 202.—Every person guilty of murder in the first degree shall suffer death, or if there be extenuating circumstances, shall suffer confinement in the penitentiary for life; * * *."

In 1917 the Legislature passed Act No. 36, whose title and sections 1, 2, 4, 5, 6 and 7 read as follows:

"An Act temporarily to abolish the death penalty in Porto Rico; to amend sections 202 and 219 of the Penal Code and section 327 of the Code of Criminal Procedure and to repeal sections 331 to 334, both inclusive, of the latter named code; to provide for the keeping of special statistics, and for other purposes."

"Section 1.—That the death penalty is abolished in Porto Rico during the time provided by section 6 of this act.

"Section 2. — That section 202 of the Penal Code is hereby amended in the manner following:

" 'Section 202.—Every person guilty of murder in the first degree shall be punished by confinement in the penitentiary for life

and every person guilty of murder in the second degree shall be punished by imprisonment in the penitentiary for not less than ten years nor more than thirty years. Every person punished by confinement for life shall remain constantly in the penitentiary.'

"Section 4.—That section 327 of the Code of Criminal Procedure is hereby amended as follows:

" 'Section 327.—When a judgment has been pronounced, a certified copy of the entry thereof upon the minutes must be forthwith furnished to the officer whose duty it is to execute the judgment, and no other warrant or authority is necessary to justify or require its execution.'

"Section 5.—That sections 331 to 334, both inclusive, of the Code of Criminal Procedure and paragraph six of section 227 of the same Code and any other law in conflict herewith are hereby repealed.

"Section 6.—This act is to take effect ninety days after its approval and shall be in force until April 30, 1921, and if by that date the Legislative Assembly of Porto Rico shall not have provided otherwise, this act shall stand repealed and the sections amended hereunder shall be in force in their previous form. This act shall have a retroactive effect applicable to convicts sentenced to death and whose sentences have not been executed.

"Section 7.—That from and after the date of the approval of this act the Department of Justice shall cause special statistics to be kept of crimes of murder, homicide, attempt to commit murder and attempt to commit homicide, such statistics to comprise such elements as are essential to determine the course of criminality in such crimes and shall be submitted by the Department of Justice to the Legislative Assembly at each term at the beginning of its regular sessions."

Notwithstanding the fact that the 30th of April, 1921, passed and no law had been enacted concerning the matter, the appellant contends that the death penalty was abolished because that part of the Act not mentioned in its title (section 6) was void and because section 202 of the Penal Code was not reenacted in proper form.

(a) In support of his first contention the appellant cites the following paragraph from section 34 of our Organic Act:

"No bill, except general appropriation bills, shall be passed containing more than one subject, which shall be clearly expressed in its title; but if any subject shall be embraced in any act which shall not be expressed in the title, such act shall be void only as to so much thereof as shall not be so expressed."

[4] We can not agree with the appellant. The title of the Act clearly states that the purpose is *temporarily* to abolish the death penalty, and section 6 fixes the time. The matters are identical. In any case they are germane.

Summing up the jurisprudence in this connection, Ruling Case Law says:

"An act is not unconstitutional because more than one object is contained therein where the objects are germane to the main subject, or they relate directly or indirectly to the main subject, and have a mutual connection with and are not foreign to the subject of such act, or when the provisions of the act are of the same nature and come legitimately under one subject." 25 R.C.L. 844.

"Since a statute may include all matters germane to the general subject, it may include all means which may fairly be regarded as in furtherance of and necessary or appropriate to the accomplishment of the objects that are fairly included within the general subject. An act may contain many provisions and details for the accomplishment of the legislative purpose, and if they legitimately tend to effectuate that object the act is not contrary to the constitutional provision." Id. 846.

"The constitutional provisions are satisfied if the title states in general terms the subject, or, under some of the provisions, the object, of the act, and it need not disclose the details of the legislation, or furnish an abstract, synopsis or index of the contents of the act; for the constitutional provision cannot be so narrowly construed as to require the title of an act, of itself, to contain the entire act. This would make legislation too difficult, and bring it into constant danger of being declared void." Id. 855-6.

(*b*) In support of his theory that section 202 of the Penal Code has not been reestablished the appellant cites another paragraph of section 34, *supra*, of our Organic Act, which reads as follows:

"No law shall be revived, or amended, or the provisions thereof

extended or conferred by reference to its title only, but so much thereof as is revived, amended, extended, or conferred shall be re-enacted and published at length.''

[5] Nor do we agree here. The question is not of the revival of a law that had been amended or repealed. Act No. 36 contains in itself everything that is necessary. It temporarily suspends the death penalty as an experiment and amends, of course temporarily also, the section of the Code fixing that penalty. The amendment is made conditionally and for a fixed period of time upon the expiration of which the statute automatically comes into effect as if it had never been amended.

In one of the earliest cases decided by the Supreme Court of the United States, in which Chief Justice Ellsworth wrote the opinion, the following appears:

"The suspension of an act for a limited time, is not a repeal of it. * * * The manifest intent of the suspending act was that the act repealed by the repealing act, should continue in force until a day then future, the first of October, 1793. It could have had no other intent. And the intention of the legislature, when discovered, must prevail, any rule of construction declared by previous acts, to the contrary notwithstanding." *Brown* v. *Barry,* 3 U. S. 367.

That this was a mere suspension and not a final amendment requiring the reenactment of the statute in the manner provided for by the Organic Act is unequivocally shown by the attitude of the Legislature.

In 1921 the Legislature passed Senate Bill No. 9 finally abolishing the death penalty. It was sent to the Governor, but was not signed by him within the next thirty days and did not become a law.

Again in 1923 the Legislature passed another act finally abolishing the death penalty in Porto Rico. It was sent to the Governor and on July 21st he returned it unsigned with the following endorsement:

"San Juan, P. R., July 21, 1923.
"The President of the Senate.
"San Juan, P. R.
"Sir:

"I have the honor to return herewith, without approval, Senate Bill No. 26, entitled:

"'AN ACT To abolish the death penalty in Porto Rico; amend sections 202 and 219 of the Penal Code, section 327 of the Code of Criminal Procedure, and to repeal sections 331 to 334, both inclusive of the last named code,'

for the following reasons:

"This Bill concerning perhaps the most important and far reaching change affecting the penal laws of Porto Rico that could be presented for consideration will need the most careful investigation and consideration by me, before I would feel justified in giving it my approval.

"During the long period of Spanish control and during nearly twenty-five years of American administration, the present law has remained in force, with the sole exception of its temporary suspension from November, 1917, until April, 1921, as provided by Act No. 36, Laws of 1917. To approve upon slight opportunity for consideration such a drastic change in existing law would hardly be justified.

Respectfully,

H. M. Towner,
Governor."

Finally, in 1925, another bill (No. 14) was presented in the Senate for the abolition of the death penalty It passed in the Senate, but the House took no definite action thereupon.

(c) As to the repeal of sections 331 to 334 of the Code of Criminal Procedure not mentioned in section 6 of Act No. 36, 1917, it may well be admitted that they stand repealed without affecting the decision of the principal question involved. Sections 342 and 343 of the same Code, which provide how and where death sentences shall be executed, and other statutes containing all that is absolutely necessary, were never changed.

For all of the foregoing reasons the judgment appealed from must be affirmed.